IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

RHONDA STIRLING,

        Plaintiff,

v.                                       No. Civ. 13-520 JCH/RHS

JOSHUA CAMPOS and
BERNALILLO COUNTY
SHERIFF'S DEPARTMENT,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

       This Matter comes before the Court on the following motions: Defendant Joshua Campos's Motion for Summary Judgment (ECF No. 45); Defendant Bernalillo County Sherriff's Department's ("BCSD") Motion for Summary Judgment (ECF No. 46); and Defendants' Motion for Summary Judgment based on Plaintiff's Discovery Abuses (ECF No. 48). The Court, having considered the motions, briefs, evidence, applicable law, and otherwise being fully advised, concludes that Defendant Campos's and BCSD's motions for summary judgment should be granted on the merits, and BCSD's motion for summary judgment based on discovery abuses should be denied as moot.

**I.    FACTUAL BACKGROUND**[1]

---

[1] The following facts are undisputed or, if disputed with admissible evidence, are construed in the light most favorable to Plaintiff, the non-moving party. In her response, Plaintiff adds a number of facts, most of which she supports with her BCSD "Citizens Complaint" dated July 5, 2011. *See* Pl.'s Resp., Ex. 1, ECF No. 52-1. She did not sign the complaint under penalty of perjury, and thus, it is inadmissible. *See* Fed. R. Civ. P. 56, 2010 Amendments, Subdivision (c) ("A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."). The Court will rely on

On June 30, 2011, Defendant Joshua Campos, a BCSD deputy, participated as a BCSD representative in a Probation and Parole TAC Plan that included accompanying probation/parole officers on home visits to their clients' homes. Pl.'s Resp. to Def. BCSD's Mot. for Summ. J., Undisputed Fact ("UF") ¶ 1, ECF No. 50. The purpose of Defendant Campos's participation was for security for the probation/parole officers and to effectuate arrests if a probation/parole officer determined a probationer/parolee violated terms of his or her probation/parole. *See* Dep. of Joshua Campos 22-23, ECF No. 50-2.

Plaintiff Rhonda Stirling was visiting her boyfriend, Ronald Mabry, at his home on June 30, 2011. Def. Campos's Mot. for Summ. J., Undisputed Fact ("UF") ¶ 1, ECF No. 45. Mr. Mabry's residence was a one-bedroom, 640 square-foot apartment. *See* Aff. of Joann Boyd ¶¶ 4-5, ECF No. 45-4. Mr. Mabry is a convicted child sex offender and, at the time, was on supervised probation and was registered as a sex offender with the Bernalillo County Sheriff's Office. Def. Campos's Mot. for Summ. J., UF ¶ 1, ECF No. 45. Pursuant to a Court Order, Mr. Mabry was required to allow home visits by his probation officers at any time during his probation. *Id.* During Plaintiff's visit, two state probation officers, Adam Baum and Troy Ruplinger, and Defendant Campos, a BCSD Deputy, arrived at Mr. Mabry's residence to conduct a home visit. *See id.*; Aff. of Adam Baum ¶ 3, 9-10, ECF No. 45-1. Plaintiff was not on probation on the date of the search. Pl.'s Resp. to Def. Campos's Mot. for Summ. J., Additional UF ¶ 2, ECF No. 52.

During the visit, Plaintiff wanted to get her homework papers, but Defendant Campos

---

those facts in Plaintiff's response that are not disputed by Defendants, but will not rely on disputed assertions by Plaintiff that are unsupported by admissible evidence. *See* Fed. R. Civ. P. 56(c), (e); D.N.M.LR-Civ. 56.1(b).

told her to remain seated. Def. Campos's Mot. for Summ. J., UF ¶ 2, ECF No. 45.[2] Despite his instruction, Plaintiff got up and started walking towards her homework, at which point Defendant Campos pushed her down onto the couch/bed by putting his hand on her thigh, and he told her to "sit there and not move." *Id.* Defendant Campos leaned his body forward and rested his hands on his weapons. *Id.* The visit lasted approximately 10 minutes. *See* Aff. of Adam Baum ¶ 18, ECF No. 45-1; Aff. of Joshua Campos ¶ 15, ECF No. 45-2.

On June 4, 2013, Plaintiff filed suit alleging violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against Defendant Campos for unlawful seizure or detention (Count I) and excessive force (Count III) and for the torts of false imprisonment (Count II) and assault and battery (Count IV) under the New Mexico Tort Claims Act ("NMTCA"). Compl., ECF No. 1. Plaintiff also alleged claims against Defendant BCSD for failure to implement appropriate policies, customs and practices on excessive force and unreasonable seizures in violation of her rights under § 1983 (Count V) and for Negligent Hiring, Training or Supervision (Count VI). Defendants have moved for summary judgment on all claims on the merits, as well as for summary judgment as a sanction for certain alleged discovery abuses.

## II.     LEGAL ANALYSIS

### A.     Section 1983

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity operates to

---

[2] The Court recognizes that Defendant Campos disputes these facts, but is relying on them only for purposes of the motion for summary judgment standard.

protect officers from the sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff, who must meet a strict two-part test of showing that: (1) the defendant violated a constitutional or statutory right and (2) the right was clearly established at the time of the conduct. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). As to the first inquiry, the question is whether the facts alleged, which are taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional or statutory right. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

The second inquiry is more specific than whether the officer's conduct violated a constitutional or statutory right; the question is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances he confronted. *Saucier*, 533 U.S. at 202. "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Moreover, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011)). Because excessive force claims involve fact-specific inquiries in which there are not likely to be previously published cases with exactly the same circumstances, the Tenth Circuit has adopted a sliding scale in which "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less

specificity is required from prior case law to clearly establish the violation." *Id.* (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

If the plaintiff establishes both elements of the qualified immunity test, then the burden shifts back to the defendant to show there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nelson*, 207 F.3d at 1206. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (quoting *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476 (10th Cir. 1993)).

### 1.     Unlawful Detention (Count I)

Probationers have a diminished expectation of privacy than other citizens. *See United States v. Freeman*, 479 F.3d 743, 747-48 (10th Cir. 2007). Probation supervision is a "special need" of the State permitting a degree of impingement on the probationer's liberty to ensure that probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. *See Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987). For example, a probation officer may search a probationer's home or arrest a probationer without a warrant and with less than probable cause. *See United States v. McCarty*, 82 F.3d 943, 947 (10th Cir. 1996). Police generally, if acting at the behest and under the direction of a parole officer, may arrest a probationer or search a probationer's home without a warrant. *See Freeman*, 479 F.3d at 746-48; *McCarty*, 82 F.3d at 947.

In this case, Plaintiff does not contest that the probation officers, as well as Defendant

Campos, were lawfully present inside Mr. Mabry's home for the purpose of supervising Mr. Mabry as a term of his probation.  Nor do Defendants contest that Plaintiff's version of the facts, on the summary judgment record, constitutes a brief detention.  Instead, Defendant Campos argues that the brief detention of Plaintiff was reasonable, and thus lawful under the Fourth Amendment, because the law authorizes the detention of occupants of a home during a probationer home visit or compliance search.  Alternatively, Defendant Campos contends that it was not clearly established at the time that such a detention was unlawful.

"The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures."  *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original).  A detention must be justified at its inception and reasonably related in scope to effectuate those purposes.  *See id.* at 682, 685.  There is no absolute rule for determining how long an investigative detention may continue; rather, the length of the seizure and the potential intrusion on Fourth Amendment rights must be juxtaposed against the law enforcement purposes to be served and the time reasonably needed to effectuate those purposes.  *See United States v. Rosborough*, 366 F.3d 1145, 1150 (10th Cir. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 685 (1985)).  A court should consider whether the police are acting in a swiftly developing situation, and in such cases, should not indulge in unrealistic second-guessing.  *See Sharpe*, 470 U.S. at 686.

In the context of a search warrant, a warrant based on probable cause "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  *Michigan v. Summers*, 452 U.S. 692, 705 (1981).  This authority to detain incident to a search is "categorical," meaning that "it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'"  *Muehler v. Mena*, 544

U.S. 93, 98 (2005) (quoting *Summers*, 452 U.S. at 705, n.19).  The Supreme Court reasoned that the character of the additional intrusion caused by detention is slight while the justifications for detention are substantial.  *Id.*

Three legitimate law enforcement interests provide substantial justification for detaining occupants: preventing flight should the officers find incriminating evidence, minimizing the risk of harm to the officers, and facilitating the orderly completion of the search.  *Id.* (quoting *Summers*, 452 U.S. at 702-03).  The Supreme Court has noted the concern that if occupants are allowed to wander around the home during such a search, "there is the potential for interference with the execution of the search warrant," or they "can hide or destroy evidence, seek to distract the officers, or simply get in the way."  *Bailey v. United States*, 133 S.Ct. 1031, 1040 (2013).  If officers have to keep close supervision of occupants who are not restrained, "they might rush the search, causing unnecessary damage or compromising its careful execution."  *Id.*  "Allowing officers to secure the scene by detaining those present also prevents the search from being impeded by occupants leaving with the evidence being sought or the means to find it."  *Id.*  Defendant Campos argues that the *Summers* rule extends to the detention of occupants during a probation home visit or compliance search.

Indeed, a number of courts have extended the *Summers* and *Mena* categorical rule to permit the limited detention of occupants during a warrantless search of a probationer's or parolee's home to minimize the risk of harm to the officers.  *See Sanchez v. Canales*, 574 F.3d 1169, 1173 (9th Cir. 2009) ("We hold, pursuant to *Muehler v. Mena*, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), that officers may constitutionally detain the occupants of a home during a parole or probation compliance search."), *reversed on other grounds by United States v.*

*King*, 687 F.3d 1189 (9th Cir. 2012);³ *Poindexter v. Carroll*, No. 1:11-cv-667, 2013 WL 2351360, at *12 (M.D. Penn. May 23, 2013) ("Just as a search pursuant to a warrant justifies a limited detention of the occupants to minimize the risk of harm to the officers, a search of a parolee's home without a warrant justifies a similar limited detention of the occupants to minimize the risk of harm to the officers."). *See also Ulitchney v. Ruzicki*, 412 F. App'x 447, 452 (3d Cir. Jan. 5, 2011) (concluding that temporary seizure of occupant of home was reasonable, where probation officer tapped his finger on occupant's forehead, pointed gun at her forehead briefly, forced his way into home by pushing open door, and restricted her movement for less than 10 minutes as parolee was arrested and removed, because of volatile nature of arresting absconding parolee who had been convicted of gun and drug offenses).

The Ninth Circuit in *Sanchez* reasoned that the three justifications set forth in *Muehler v. Mena* for detention of occupants during execution of a search warrant are present in every valid probationer home search, whether or not the search is conducted pursuant to a warrant:

> Either way, the additional intrusion caused by detention is slight and the justifications for detention are substantial: the law should always be concerned to prevent the flight of criminals, ensure officer safety, and facilitate orderly completions of valid searches—warrant or no warrant. . . .
>
> Given that police officers may search the home of a parolee or probationer without a warrant and without running afoul of the Fourth Amendment so long as the officers have probable cause to believe that they are at the address where . . . the parolee . . . resides, there is no need to be concerned that a neutral magistrate had not approved the reasonableness of the compliance search. Just as in a search pursuant to a search warrant, therefore, it is constitutionally reasonable to require the occupant of a home to remain while officers of the law execute a valid probation compliance search. . . .

---

3 The Ninth Circuit overruled the *Sanchez* case, among other cases, "to the extent they hold that there is no constitutional difference between probation and parole for purposes of the fourth amendment," because these cases conflict with the Supreme Court's holding in *Samson v. California*, 547 U.S. 843, 850 (2006), that parolees have fewer expectations of privacy than probationers. *King*, 687 F.3d at 1189. At the time of the incident in question here, the *Sanchez* case had not been overruled at all, and the Court determines that the reasoning of the opinion remains sound as to the need to briefly detain occupants, despite the slightly greater privacy interests of a probationer.

> Thus there is no reason to conclude that *Muehler* means officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search only when the search is conducted pursuant to a search warrant but *not* to a probation or parole compliance check. To the contrary, *Muehler*'s underlying justifications permitting detentions during home searches apply with full force here, notwithstanding the absence of a search warrant. Just as in *Muehler*, the additional intrusion caused by detention is slight while the justifications for detention are substantial.  We therefore conclude—assuming without deciding that the officers had probable cause to believe Oscar was at home and that a detention took place—that the detention was constitutionally reasonable.

*Sanchez*, 574 F.3d at 1174-75 (internal quotations, citations, brackets, and footnote omitted).

Plaintiff does not address this case law, instead relying on the case of *Trask v. Franco*, 446 F.3d 1036 (10th Cir. 2006).  That case, however, is not on point.  In *Trask*, the probationer was no longer on probation at the time of the probation compliance search, so the Tenth Circuit examined whether the officers were entitled to qualified immunity and concluded that there was a question of fact as to the reasonableness of the officers' belief that the probationer was on probation at the time of the search.  *See id.* at 1044. Here, there is no question that Mr. Mabry was on probation at the time and that the officers were lawfully present in Mr. Mabry's apartment.  *Trask* is thus not relevant to the specific question in this case – whether officers may briefly detain and secure other occupants during a lawful probation home visit or compliance search.  Plaintiff cites to no other Tenth Circuit or Supreme Court cases on point, or to any out-of-circuit authority that reaches the opposite conclusion of the cases relied upon by Defendant.

In light of the *Sanchez*, *Ruzicki*, and *Poindexter* cases, and the lack of any contrary pertinent authority cited by Plaintiff, Plaintiff has not met her burden of showing that Defendant Campos's brief detention of her during the probation home visit and compliance search violated her constitutional rights or clearly established law.  *Cf. Poindexter*, 2013 WL 2351360, at *13 ("Under the circumstances that the agents faced, i.e., entering the home of a parolee, who may

have been using drugs, seeing a man on a couch make a movement to conceal something, and needing to secure the premises to search for and find the parolee, their handcuffing and detention of Poindexter for the brief period of time needed to secure the premises did not violate clearly established law."). Defendant Campos is thus entitled to qualified immunity on Plaintiff's unlawful seizure claim.

### 2. Excessive Force (Count III)

Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395-97 (1989). The reasonableness of the officer's belief as to the appropriate level of force should be judged from the perspective of an officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396. Among the factors that courts should consider in determining whether a police officer applied excessive force are (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

Inherent in an officer's authority to make an arrest or detention is the authority to use reasonable force to effectuate the arrest or detention. *See Muehler*, 544 U.S. at 98-99. As the Tenth Circuit explained:

> [T]he excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case. Thus, in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.

*Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).

In this case, Defendant Campos told Plaintiff to stay seated, and when she got up to

retrieve her homework, defying his command, he put his hand on her thigh, pushed her down on the couch, and told her to "sit there and not move" while he rested his hands on his weapons. Plaintiff sustained no physical injuries during this encounter and was allowed to leave within 10 minutes of the arrival of law enforcement. Given that Plaintiff attempted to disregard Defendant Campos's instruction to remain seated, and he had a lawful right to detain occupants to secure the scene during the probation compliance check, the force used to ensure she remained seated was no more than reasonably necessary under the circumstances to detain her. Nor would it have been clear to a reasonable officer that the force used under the circumstances violated Plaintiff's Fourth Amendment rights. Defendant Campos is thus entitled to qualified immunity on Plaintiff's excessive force claim. *Cf. Saucier v. Katz*, 533 U.S. 194, 208-09 (2001) (holding that officer was entitled to qualified immunity on protestor's excessive force claim because officer was permitted to detain suspect and gratuitous shove to put protester in van resulted in no injury); *Thompson v. City of Lawrence*, 58 F.3d 1511, 1516-17 (10th Cir. 1995) (holding that it was objectively reasonable for officers to temporarily restrain bystander by shoving her to floor, drawing weapon, and handcuffing her in light of governmental interest in securing area around suspect who they had probable cause to arrest and who had given consent to search).

### 3. Municipal Liability (Count V)

Plaintiff's § 1983 claim against BCSO is based on its supervisory liability and its failure to train Defendant Campos regarding lawful methods to deal with occupants present during a probation home search. *See* Pl.'s Resp. to Def. BCSD's Mot. for Summ. J. 3, ECF No. 50. A municipality, however, may not be held liable under § 1983 if there are no underlying constitutional violations by its officers. *Thompson*, 58 F.3d at 1517. Because Plaintiff has failed to show that Defendant Campos deprived her of any constitutional rights, her § 1983 municipal

liability claim fails too as a matter of law.

### B. State Law Claims

For Plaintiff's state law claims, the court must apply the traditional standard of review for summary judgment, in which the moving party bears the burden of making a prima facie showing of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Scull v. New Mexico*, 236 F.3d 588, 598-99 (10th Cir. 2000).

#### 1. False Imprisonment (Count II) and False Seizure or Detention (Count IV)

"The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so." *Santillo v. N.M. Dept. of Public Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84. The torts of false arrest and false imprisonment are similar in that a false arrest is merely one way of committing false imprisonment. *Id.* "An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." *Id.*

Defendant Campos is entitled to summary judgment on Plaintiff's false imprisonment and false seizure claim because, as explained above, he did not act with knowledge that he had no lawful authority to detain Plaintiff. The law indicates that Defendant Campos had the authority to detain Plaintiff during the probation home visit and he acted in good faith. *Cf. Scull*, 236 F.3d at 598 (affirming summary judgment in favor of detention center employees on false imprisonment claim because, based on NCIC hit, they believed they had the lawful authority to imprison plaintiff).

#### 2. Assault and Battery (Count IV)

To prove an assault, a plaintiff must show that the defendant committed an unlawful act,

threat, or menacing conduct that caused the plaintiff to believe she was in danger of receiving an immediate battery.  *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1208 (10th Cir. 2006); *Romero v. Sanchez*, 1995-NMSC-028, ¶ 12, 895 P.2d 212.  A battery occurs when the defendant acts intending to cause a harmful or offensive contact with the plaintiff, or an imminent apprehension of such a contact, and an offensive contact with the plaintiff directly or indirectly results.  *Fuerschbach*, 439 F.3d at 1208-09.  An officer may not be liable for assault or battery if he acts in good faith and did not use more force than reasonably necessary to affect a detention or arrest or preserve the peace.  *See Tanberg v. Sholtis*, 401 F.3d 1151, 1168 (10th Cir. 2005); *State v. Kraul*, 1977-NMCA-032, ¶¶ 26-27, 563 P.2d 108.  Because this Court has found that Defendant Campos used no more force than reasonably necessary to effectuate the detention of Plaintiff, which he lawfully could do, he did not assault or batter Plaintiff and is entitled to summary judgment on these claims.

### 3. Negligent Supervision (Count VI)

A law enforcement officer has the duty in any activity to exercise for the safety of others that care ordinarily exercised by a reasonably prudent and qualified officer in light of the nature of what is being done.  *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dept.*, 1996-NMSC-021, ¶ 22, 916 P.2d 1313 (quoting *Cross v. City of Clovis*, 107 N.M. 251, 253 (1988)).  Immunity is waived for negligence under Section 41-4-12 only if the negligence caused an enumerated tort or violation of rights.  *See Bober v. New Mexico State Fair*, 1991-NMSC-031, ¶ 32, 808 P.2d 614.  Simple negligence alone does not amount to a commission of one of the enumerated torts; rather, for immunity to be waived under Section 41-4-12, a law enforcement officer's negligence must cause a third party to commit one of the enumerated intentional acts.  *See id.*; *McDermitt v. Corrections Corp. of America*, 1991-NMCA-034, ¶ 1, 814 P.2d 115 (holding that NMTCA

waives immunity for supervisory law enforcement officers whose negligent training or supervision was a proximate cause of the tort, but "immunity is not waived for negligent training and supervision standing alone; such negligence must cause a specified tort or violation of rights"). Here, the Court has concluded that Defendant Campos did not commit any of the torts specified in Section 41-4-12 that Plaintiff claims he violated. Consequently, the City's supervision did not cause a tort or violation of rights, and BCSD is entitled to summary judgment on Plaintiff's negligent supervision claim.

### C. Discovery Abuses

As for Defendants' motion for summary judgment based on Plaintiff's alleged discovery abuses, this Court has determined that Defendants are entitled to summary judgment on all claims in this case and the case should be dismissed on its merits. Accordingly, Defendant's Motion for Summary Judgment based on Plaintiff's Discovery Abuses (ECF No. 48) will be denied as moot.

**IT IS THEREFORE ORDERED** that

1. Defendant Joshua Campos's Motion for Summary Judgment (**ECF No. 45**) is **GRANTED**.

2. Defendant Bernalillo County Sherriff's Department's ("BCSD") Motion for Summary Judgment (**ECF No. 46**) is **GRANTED**.

3. Defendants are entitled to summary judgment on all claims in this case and Plaintiff's **CASE IS DISMISSED WITH PREJUDICE**.

4. Defendants' Motion for Summary Judgment based on Plaintiff's Discovery

Abuses (**ECF No. 48**) is **DENIED AS MOOT**.

_____
UNITED STATES DISTRICT JUDGE